# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NORTHERN DIVISION

| | | |
|---|---|---|
| RED WOLF COALITION, DEFENDERS OF WILDLIFE, and ANIMAL WELFARE INSTITUTE, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 2:20-cv-00075 |
| THE UNITED STATES FISH AND WILDLIFE SERVICE; AURELIA SKIPWITH, in her official capacity as Director of the United States Fish and Wildlife Service; LEOPOLDO MIRANDA, in his official Capacity as Regional Director of the United States Fish and Wildlife Service Southeast Region, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

STANDARD ................................................................................................................ 5

ARGUMENT ............................................................................................................... 6

   A.   Plaintiffs' APA claim (Third Claim for Relief) fails because they do not challenge a "final
        agency action" ................................................................................................ 6

      1.   Plaintiffs do not challenge an agency "action" ............................................ 6

      2.   Plaintiffs do not challenge a "final" agency action ...................................... 8

   B.   ESA 7(a)(1) does not apply to the Service ......................................................... 9

   C.   Plaintiffs' Section 7(a)(2) claim fails because the Service has not taken an "action" that
        triggers Section 7(a)(2) .................................................................................. 11

CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**CASE**             **PAGE**

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*,
 946 F.3d 615 (D.C. Cir. 2020) ................................................................. 9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................. 5

*Ass'n of Admin. Law Judges v. U.S. Off. of Pers. Mgmt.*,
 640 F. Supp. 2d 66 (D.D.C. 2009) ........................................................... 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .............................................................................. 5, 6

*Bennett v. Spear*,
 520 U.S. 154 (1997) ................................................................................. 8

*Cal. By and Through Brown v. EPA*,
 940 F.3d 1342 (D.C. Cir. 2019) ............................................................... 9

*Cal. Sportfishing Prot. All. v. F.E.R.C.*,
 472 F.3d 593 (9th Cir. 2006) ................................................................. 13

*Cobell v. Kempthorne*,
 455 F.3d 301 (D.C. Cir. 2006) ................................................................. 8

*Ctr. for Biological Diversity v. Bernhardt*,
 CV 19-109-M-DLC, 2020 WL 7640045 (D. Mont. Dec. 23, 2020) ........................................................ 11

*Ctr. for Biological Diversity v. Envtl. Prot. Agency*,
 847 F.3d 1075 (9th Cir. 2017) ............................................................... 13

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P,
 'ship*, 213 F.3d 175 (4th Cir. 2000) ........................................................ 6

*Fed. Power Comm'n v. Idaho Power Co.*,
 344 U.S. 17 (1952) ................................................................................... 8

*Forest Guardians v. Forsgren*,
 478 F.3d 1149 (10th Cir. 2007) ............................................................. 13

*Fund for Animals Inc. v. U.S. Bureau of Land Mgmt.*,
    460 F.3d 13 (D.C. Cir. 2006) ............................................................................ 7

*Indep. Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004) ........................................................................... 7

*Int'l Ctr. For Tech. Assessment v. Thompson*,
    421 F. Supp. 2d 1 (D.D.C. 2006) .................................................................... 13

*Karuk Tribe of California v. U. S. Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2012), 681 F.3d ....................................................... 12

*Lamie v. U.S.*,
    *Tr.*, 540 U.S. 526 (2004) .................................................................................. 9

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ........................................................................................... 7

*Murray Energy Corp. v. EPA*,
    861 F.3d 529 (4th Cir. 2017) ............................................................................ 8

*Mylan Lab'ys, Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) .............................................................................. 5

*N.C. ex rel. Cooper v. Tenn. Valley Auth.*,
    515 F.3d 344 (4th Cir. 2008) ............................................................................ 9

*Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*,
    898 F.2d 1410 (9th Cir. 1990) ........................................................................ 10

*Vill. of Bald Head Island v. Army Corp of Eng'rs*,
    714 F.3d 186 (4th Cir. 2013) ............................................................................ 6

*W. Watersheds Project v. Matejko*,
    468 F.3d 1099 (9th Cir. 2006) .................................................................... 12, 13

*Wyo. Farm Bureau Fed'n v. Babbitt*,
    199 F.3d 1224 (10th Cir. 2000) ...................................................................... 12

## STATUTES

5 U.S.C. § 704 ................................................................................................................ 8

5 U.S.C. § 706(2)(D) ....................................................................................................... 8

16 U.S.C. § 1531(b) ........................................................................................................ 1

16 U.S.C. § 1532(6) ........................................................................................................ 1

16 U.S.C. § 1532(13) ..................................................................................................... 10

16 U.S.C. § 1533(c) ........................................................................................................ 1

16 U.S.C. § 1533(f)(1)(B) ............................................................................................... 4

16 U.S.C. § 1536(a)(1) ................................................................................................... 10

16 U.S.C. § 1536(a)(2) ............................................................................................... 11, 12

16 U.S.C. § 1539(j)(1)-(2)(A) .......................................................................................... 2

16 U.S.C. § 1539(j)(2)(B) ................................................................................................ 2

16 U.S.C. § 1539(j)(2)(C) ................................................................................................ 2

16 U.S.C. § 1539(j)(2)(C)(i) ............................................................................................. 2

## FEDERAL REGULATIONS

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 5, 6

50 C.F.R. § 17.81(c)(4) .................................................................................................... 2

50 C.F.R. § 17.81(d) ........................................................................................................ 2

50 C.F.R. § 17.84(c) ........................................................................................................ 3

50 C.F.R. § 402.01(b) ...................................................................................................... 1

51 Fed. Reg. 41,790, 41,791 (Nov. 19, 1986) ................................................................. 3

60 Fed. Reg. 18,940 (Apr. 13, 1995) ............................................................................... 3

83 Fed. Reg. 30,382 (June 28, 2018) ............................................................................... 4

83 Fed. Reg. 30,383 ........................................................................................................ 4

83 Fed. Reg. 30,385 ........................................................................................................ 4

63 FR 54151 (Oct. 8, 1998) ............................................................................................. 3

82 Fed. Reg. 23,518 (May 23, 2017) ............................................................................... 3

82 Fed. Reg. 23,519 ........................................................................................................ 3

## INTRODUCTION

Neither the Endangered Species Act ("ESA") nor the Administrative Procedure Act ("APA") permits Plaintiffs to bring the types of claims at issue in this case. Plaintiffs insist that the U.S. Fish and Wildlife Service ("the Service") must undertake exactly the measures that they wish to see—the release of captive-born red wolves into the North Carolina Experimental Population of red wolves and the sterilization of coyotes—and ignore Congress's clear direction that the Service has significant discretion in determining the role that the North Carolina non-essential experimental population ("NC NEP") plays in the overall species recovery of the red wolf. Plaintiffs do not challenge any action, final or otherwise, under either the APA or ESA that the Service has taken or is required to take. This action and the relief sought are simply not allowed under the APA or ESA. For these reasons, as set forth in more detail below, the Court should dismiss this case.

## BACKGROUND

The ESA's purpose is to conserve and recover endangered and threatened species and the ecosystems on which they depend. 16 U.S.C. § 1531(b). The Secretaries of Commerce and the Interior share responsibility for implementing the ESA. These agencies are responsible for the listing of endangered and threatened species and the recovery of those species.[1] *Id.* § 1533(c), (f). Under ESA Section 10(j), the Service may authorize the release of an "experimental population" of a threatened or endangered species outside the species' current range if the Secretary

---

[1] An endangered species is "in danger of extinction throughout all or a significant portion of its range" while a threatened species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(6), (20). The Secretaries of the Interior and Commerce are responsible for implementing the ESA, and they have delegated their respective responsibilities to the Service and the National Marine Fisheries Service, respectively. In general, the Service has responsibility for terrestrial species such as the red wolf. *See* 50 C.F.R. § 402.01(b).

determines that the release will further the species' conservation and the released population is wholly separate geographically from non-experimental populations of the same species. *Id.* § 1539(j)(1)-(2)(A). Before authorizing the release of an experimental population, the Service must promulgate a regulation that identifies the population and determines whether it is essential to the continued existence of an endangered or threatened species. *Id.* § 1539(j)(2)(B).

Experimental populations generally are treated as threatened species. *Id.* § 1539(j)(2)(C). However, for purposes of ESA Section 7(a)(2), experimental populations are treated as species proposed for listing, except when they occur within a National Wildlife Refuge or National Park System. *Id.* § 1539(j)(2)(C)(i). When the ESA was amended to add 10(j), Congress discussed that this amendment would "relax certain restrictions otherwise applicable to listed species and authorize the Secretary to relax others." *See* H.R. Rep. 97-567, 2833 (1982). This relaxed management was intended to "encourage private parties to host experimental populations on their lands." *Id.* at 2817. Congress also stated that affected private landowners should be fully apprised and any regulation should be viewed as an agreement between all affected parties. *Id.* at 2834. In light of this Congressional intent, the Service's implementing regulations for Section 10(j) rules make clear the significance of state and landowner support, as they state that any regulations promulgated under Section 10(j) must "to the maximum extent practicable," represent a cooperative agreement between state and federal agencies and private landowners. 50 C.F.R. § 17.81(d). Additionally, the implementing regulations state that the species-specific 10(j) regulation shall include "a process for periodic review and evaluation of the success or failure of the release and the effect of the release on the conservation and recovery of the species." 50 C.F.R. § 17.81(c)(4). This language is an acknowledgment that some releases may

not be successful in the recovery of the species, and that the Service has significant management flexibility to determine the appropriate conservation measures.

The red wolf originally inhabited large portions of the southeastern United States, but by the 1970s, it occupied only a small coastal area in southeast Texas and southwest Louisiana. 51 Fed. Reg. 41,790, 41,791 (Nov. 19, 1986). At that time, to save the species from extinction, the Service began capturing wild red wolves and placing them in a captive breeding program. *Id.*; 82 Fed. Reg. 23,518 (May 23, 2017). Through that program, the Service effectively managed the population until it was stable, with sufficiently large numbers to support a reintroduction effort. 51 Fed. Reg. at 41,791–92; 82 Fed. Reg. at 23,518–19.

In 1987, the Service introduced a nonessential experimental population of red wolves into eastern North Carolina. 60 Fed. Reg. 18,940 (Apr. 13, 1995); 50 C.F.R. § 17.84(c). When the Service established the population in 1987, North Carolina had an "absence of coyotes." 82 Fed. Reg. at 23,519. However, coyotes expanded into the area and, once again, became a threat to red wolves through hybridization. *Id.* at 23,519. To address this, the Service began sterilizing coyotes in 2000 as part of a non-binding Adaptive Management Plan. *Id.*

The Service initiated a second release of red wolves in the Great Smoky Mountains National Park, Tennessee, in an attempt to form another nonessential experimental population of red wolves. U.S. Fish & Wildlife Serv., Red Wolf Species Status Assessment, Report p. 14 (2018), https://ecos.fws.gov/ServCat/DownloadFile/161384. The Great Smoky Mountain population was terminated in 1998 due to emigration of wolves to lower elevations with greater prey availability and low pup survival. *Id*; 63 FR 54151 (Oct. 8, 1998).

The NC NEP was successful for a number of years, but as time went on there was a change in biological conditions, including an increase in the coyote population, and

sociopolitical factors, such as conflict with neighboring landowners due to the prevalence of red wolves that wandered off Refuge lands. In June 2018, the Service proposed to replace the regulations governing the NC NEP. 83 Fed. Reg. 30,382 (June 28, 2018). The new rule proposes reducing the size of the nonessential experimental population area from five counties to the Alligator River National Wildlife Refuge and Dare County Bombing Range. *Id.* at 30,385. The goals of the proposed rule were to ensure the conservation of the species by creating a more manageable wild population that would better secure the captive population, as well as reduce conflicts with landowners. *Id.* at 30,383. The Service continues to evaluate the proposed rule in an effort to consider public comments, concerns from private landowners and the State, and ongoing litigation.

Last year, the Service entered into a settlement agreement in front of this court setting a deadline of February 2023 by which to issue—after public notice and comment on a draft recovery plan that is published in the Federal Register—a final recovery plan for the red wolf. Ctr. for Biological Diversity v. Bernhardt, No. 2:19-cv-00040-BO (E.D.N.C. Nov. 19, 2019), ECF No. 19. The recovery plan is the document that the ESA contemplates will act as a roadmap that guides conservation and recovery efforts for listed species. Under the ESA, the recovery plan must contain, to the maximum extent practicable, the following components:

> (i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;
> (ii) objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and
> (iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

16 U.S.C. § 1533(f)(1)(B). Recovery plans identify and prioritize actions necessary to conserve a species in the short-term and ultimately recover a species. While the goal is for recovery of a

species in the wild, ensuring a strong captive population may provide the foundation for those recovery efforts.

The Service is currently engaging in a number of red wolf management techniques, including Prey for the Pack, which provides technical assistance and financial cost-share to help private landowners implement habitat improvement projects on lands within the current population area of the NC NEP. U.S. Fish & Wildlife Serv., Dep't of the Interior, Red wolf *Canis rufus*, https://www.fws.gov/southeast/wildlife/mammals/red-wolf/#:~:text=Prey%20for%20the%20Pack%20is,wildlife%20habitats%20on%20their%20property (last visited Jan. 15, 2021).

This case was filed on November 16, 2020. Plaintiffs' Complaint asserts three claims: (1) Defendants violated ESA Section 7(a)(2) by failing to ensure that its actions are not likely to jeopardize the continued existence of the red wolf; (2) Defendants violated Section 7(a)(1) of the ESA by failing to carry out a program for the conservation of the red wolf; and (3) Defendants violated the APA by reversing their policy on the release of captive red wolves into the red wolf recovery area. ECF No. 1, Plaintiffs' Complaint ¶¶ 94–110.

## STANDARD

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In doing so, the court must accept all well-pled allegations in a complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, a court need not accept a complaint's legal conclusions, elements of a cause of action, and conclusory statements. *Iqbal*, 556 U.S. at 678.

Nor must a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## ARGUMENT

### A. Plaintiffs' APA claim (Third Claim for Relief) fails because they do not challenge a "final agency action"

Plaintiffs allege that the Service failed to follow procedures required by the APA before changing its "position" of releasing captive red wolves into the NC NEP. Compl. ¶ 109. But this is neither an "action" nor "final" within the meaning of the APA, and thus their APA claim is not reviewable by this Court. If and when the Service changes any aspect of the Section 10(j) rule for the red wolf, it will go through a notice and comment process. The final rule will be a final agency action that is judicially reviewable.

#### 1. Plaintiffs do not challenge an agency "action"

Plaintiffs allege that the Service's "policy" on the release of captive red wolves amounts to a "change in position" that violates the APA. Compl. ¶¶ 77–83; 109. But while Plaintiffs purport to challenge what they call a reversal in policy—which is, in other words, a policy decision—what they are actually challenging is the implementation of the red wolf management program. Implementation of a program is not an "action" within the meaning of the APA.

As the Fourth Circuit stated in affirming this Court, "[t]he term 'action' as used in the APA is a term of art that does not include all conduct such as, for example, constructing a building, operating a program, or performing a contract. Rather, the APA's definition of agency action focuses on an agency's *determination* of rights and obligations." *Vill. of Bald Head Island*

*v. Army Corp of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citation omitted), *aff'g* 833 F. Supp. 2d 524, 532 (E.D.N.C. 2011) (finding that agency letters did not constitute agency action). In that case, this court found that the Army Corps of Engineers' alleged failure to implement a project (that would widen the banks of the Cape Fear River and provide sand for its beaches in accordance with commitments that the agency had made to municipalities) was not subject to judicial review under the APA because it was not a final agency action. Specifically, this court dismissed the APA claims because "[i]mplementation or continued operation of a project [was] not . . . federal agency action," *id.* at 532, and "[e]ven assuming, *arguendo*, that Plaintiff ha[d] in fact alleged agency action, Plaintiff ha[d] failed to show that any of the alleged agency actions [were] final agency actions that might confer jurisdiction on the Court," *id.* at 531. The Fourth Circuit affirmed, finding that the project implementation was not a cognizable APA claim.

Similarly, here Plaintiffs are challenging the implementation of the Service's red wolf management. *See also Ass'n of Admin. Law Judges v. U.S. Off. of Pers. Mgmt.*, 640 F. Supp. 2d 66, 73 (D.D.C. 2009) ("Not everything an agency does constitutes final agency action reviewable by the courts. 'Much of what an agency does is in anticipation of agency action. Agencies prepare proposals, conduct studies, meet with members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs.'") (quoting *Fund for Animals Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (internal citation omitted); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) ("[A]gency action" is "not so all-encompassing as to authorize . . . 'judicial review [over] everything done by an administrative agency.'") (second alteration in original) (citation omitted); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990) (an entire agency program is not agency action).

7

What Plaintiffs ask is for this Court to instruct the Service on what management procedures for the red wolf it should affirmatively undertake. This is the sort of judicial inquiry into a "broad programmatic" undertaking for which the APA has foreclosed judicial review. *See Cobell v. Kempthorne*, 455 F.3d 301, 305 (D.C. Cir. 2006) (noting that "under the APA, courts may only review specific agency action ...; courts cannot order 'programmatic improvements,' … or 'compel[ ] compliance with broad statutory mandates'") (alteration in original) (citation omitted). This Court may be authorized to vacate an agency's program as unlawful or contrary to a procedure required by law, *see* 5 U.S.C. § 706(2)(D), but that authority is not power to exercise an essentially administrative function, *see Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 21 (1952). Because Plaintiffs ask this Court to impermissibly "supervise an agency's compliance with [the] broad statutory mandate" of the ESA, *Murray Energy Corp. v. EPA*, 861 F.3d 529, 537 n.4 (4th Cir. 2017), there is no cognizable APA claim.

### 2. Plaintiffs do not challenge a "final" agency action

Plaintiffs also do not challenge a "final" agency action. This is fatal to their APA claim.

Under the APA, a court may only review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "[T]wo conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotations omitted).

The Service's pause in releasing captive red wolves into the wild is not the consummation of an agency decisionmaking process. And certainly, no rights, obligations, or

legal consequences have been determined as a result.  The agency's decision to pause an aspect

of its red wolf management is an interlocutory decision made to allow it to review whether

changes to the captive release program would be more effective and to take a broader look at the

plan for recovery of the species.  Such an interim decision does not constitute final agency

action.  *See Cal. By and Through Brown v. EPA*, 940 F.3d 1342, 1350-53 (D.C. Cir. 2019) (an

agency determination stating its intent to review and change existing regulations was not a final

agency action).  Indeed, the prospect of future consideration necessarily means that the Service's

decisionmaking has not ended.  *See Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d

615, 620 (D.C. Cir. 2020) (where an agency said it would review an issue and issue appropriate

standards, but had not yet issued any standards, the agency's decisionmaking process

"remain[ed] unconsummated").

### B.  ESA 7(a)(1) does not apply to the Service

Plaintiffs' claim that the Service's current reevaluation of the wisdom of releasing captive

wolves into the NC NEP violates ESA Section 7(a)(1) fails because they utilize an incorrect

interpretation of this section to levy a claim against the Service.  Plaintiffs are impermissibly

trying to dictate to the Service the terms of its conservation plan for the red wolf.  Section 7(a)(1)

does not allow them to do so.

Federal Defendants turn first to the plain language of the statute.  *Lamie v. U.S. Tr.*, 540

U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole

function of the courts—at least where the disposition required by the text is not absurd—is to

enforce it according to its terms.") (internal quotation marks omitted); *see also N.C. ex rel.*

*Cooper v. Tenn. Valley Auth.*, 515 F.3d 344, 351 (4th Cir. 2008) (In interpreting the plain

language of a statute, courts are to give the terms their "ordinary, contemporary, common

9

meaning, absent an indication Congress intended [it] to bear some different import.") (alteration in original) (citation omitted).

Section 7(a)(1) states, "The Secretary [of the Interior] shall review other programs administered by him and utilize such programs in furtherance of the purposes of this chapter. All other Federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 1533 of this title." 16 U.S.C. § 1536(a)(1). The term "Secretary" in the first sentence of Section 7(a)(1) refers to the Secretaries of Interior and Commerce. *See Id.* § 1532(13). That is, the first sentence of Section 7(a)(1) directs the Secretary of Interior (acting through the Service), acting in the role of administrator of the Act, to review "other programs administered" by him and to utilize such programs in furtherance of the purposes of the ESA. Accordingly, because the Service acts as an administrator of the ESA, it is to review programs *outside of the ESA* and utilize such programs in furtherance of the purposes of the ESA. *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1417 n.15 (9th Cir. 1990) (Holding that the phrase "[a]ll other Federal agencies," in Section 7(a)(1) means all "non-Interior Department agencies").

Plaintiffs' Section 7(a)(1) claim would require that the second sentence of Section 7(a)(1) apply to the Service and require the Service to affirmatively conduct a Section 7(a)(1) review of ESA programs that it promulgates and administers. Reading the two sentences of Section 7(a)(1) together refutes such an argument because—in contrast to the first sentence which refers to the "Secretary"—the second sentence refers to "[a]ll other Federal agencies." 16 U.S.C. § 1536(a)(1). Moreover, the Service's administration of the ESA in connection with its own management of the red wolf would necessarily have to be consistent with the purposes of the

ESA.  The red wolf recovery is not an "other program" of the Secretary, and so there is no duty that the Service has in pursuing its red wolf recovery program under the second sentence of Section 7(a)(1).  *See Ctr. for Biological Diversity v. Bernhardt*, CV 19-109-M-DLC, 2020 WL 7640045, at *10 (D. Mont. Dec. 23, 2020) (Denying Section § 7(a)(1) claims on the basis that any mandatory conservation duty under that provision "plainly does not apply to the Fish and Wildlife Service.").

At bottom, the plain text of the statute makes clear that the Service's red wolf program is not an "other program" of the Secretary such that the Service has a duty under the second sentence of Section 7(a)(1) as Plaintiffs contend.  Accordingly, this claim fails.

### C.  Plaintiffs' Section 7(a)(2) claim fails because the Service has not taken an "action" that triggers Section 7(a)(2)

Plaintiffs allege that the Service has failed to meet its substantive duty "to ensure that the Service's current management of the wild red wolf population, including its policy of prohibiting releases from the captive population and its termination of the Adaptive Management Work Plan, is not likely to jeopardize the continued existence of the significantly declined red wolf population in violation of Section 7 of the ESA."  Compl. ¶ 100.  Plaintiffs' Section 7(a)(2) claim fails because they have not alleged that the Service has taken an agency action that would trigger the requirements of 7(a)(2).

As an initial matter, Plaintiffs conflate the Service's duty to "insure that any action authorized, funded, or carried out by [USFWS] . . . is not likely to jeopardize the continued existence of any endangered or threatened *species,*" 16 U.S.C. § 1536(a)(2) (emphasis added), with a duty to ensure the continued existence of the NC NEP is not jeopardized.  The NC NEP is, by its very definition, a *non-essential* experimental population managed under the Section 10(j) Rule that established the population.  The Service has the discretion to manage the NC NEP as it

sees fit while still working towards recovery of the red wolf as a species. *See Wyo. Farm Bureau Fed'n v. Babbitt*, 199 F.3d 1224, 1236 (10th Cir. 2000) ("[Section 10(j)] confers broad discretion to the Secretary to manage *populations* to better conserve and recover endangered species.").

Having established that the Service can maintain the NC NEP as it sees fit so long as the population serves the recovery effort for the red wolf as a species, Federal Defendants now turn to the 7(a)(2) claim. In relevant part, section 7(a)(2) requires "[e]ach federal agency . . . in consultation with and with the assistance of" the Service to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species." 16 U.S.C. § 1536(a)(2). The requirement that the agency's challenged activity be an "action" applies to both the procedural and substantive aspects of 7(a)(2). That is, the Service's duty to ensure no jeopardy to a listed species must be within the context of a specific agency action. Plaintiffs' allegation that the Service has a "policy *prohibiting* releases from the captive population" does not constitute an "action" under 7(a)(2). Compl. ¶ 100 (emphasis added). This is because Plaintiffs have alleged no *affirmative* federal action that triggers an obligation by the Service to undertake Section 7 consultation.

In *Karuk Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006 (9th Cir. 2012), 681 F.3d at 1021, the Ninth Circuit sitting en banc made clear that an ESA claim accrues only when an agency takes discretionary, affirmative action, holding that "'inaction' is not 'action' for [16 U.S.C.] Section [1536](a)(2) purposes." Accordingly, Section 7(a)(2) does not apply to actions *not* authorized, funded, or carried out—like *not* releasing wolves from the captive population and not sterilizing coyotes under the Adaptive Management Work Plan. *See W. Watersheds Project v. Matejko*, 468 F.3d 1099, 1108 (9th Cir. 2006) ("The language does indicate that some agency

12

actions are not covered—those the agency does *not* authorize, fund, or carry out." (citation omitted)).

Plaintiffs attempt to cast inactions as actions, framing the Service's alleged prohibition of releases from the captive population as its "current management of red wolves" and not sterilizing coyotes as the "termination of the Adaptive Management Work Plan." Compl. ¶ 100. But this logic would qualify every agency decision not to act as an affirmative action subject to Section 7(a)(2). The meaning of "action" does not stretch this far. *See Matejko*, 468 F.3d at 1108 ("Although the term 'agency action' is to be construed broadly . . . section 7(a)(2) consultation stems only from 'affirmative actions.'"); *Cal. Sportfishing Prot. All. v. F.E.R.C.*, 472 F.3d 593, 598 (9th Cir. 2006) (a private party's ongoing operation of a hydropower project, pursuant to an earlier approved permit, was not an affirmative act by the federal agency); *Ctr. for Biological Diversity v. Envtl. Prot. Agency*, 847 F.3d 1075, 1090 (9th Cir. 2017) (finding that Environmental Protection Agency's pesticide registration program did not constitute ongoing agency action that trigger duty to comply with the ESA); *Int'l Ctr. For Tech. Assessment v. Thompson,* 421 F. Supp. 2d 1, 9 (D.D.C. 2006) (finding that Food and Drug Administration "did not engage in an 'agency action' triggering ESA compliance" because "the plaintiffs mischaracterized the FDA's refusal to engage in enforcement activity as an affirmative action"). 7(a)(2) is triggered only when the Service exercises its discretion to act. Not, as Plaintiffs allege, each time the Service fails to act in accordance with Plaintiffs' preferred approach.

What Plaintiffs are really attacking is the Service's red wolf recovery program. But Section 7(a)(2) does not encompass the Service's day-to-day management of the red wolf population, since such a requirement would be effectively never-ending. *See Forest Guardians v. Forsgren*, 478 F.3d 1149, 1159 (10th Cir. 2007). Because Plaintiffs have identified no

specific affirmative act by the Service that constitutes an "action" within the meaning of 7(a)(2), this claim fails.

## CONCLUSION

For the foregoing reasons, the Court should grant Federal Defendants' Motion to Dismiss.

Dated:  January 19, 2021                    Respectfully submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General
SETH M. BARSKY
Section Chief
MEREDITH L. FLAX
Assistant Section Chief


*/s/ Shampa A. Panda*
SHAMPA A. PANDA
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0431
Fax: (202) 305-0275
E-mail: shampa.panda@usdoj.gov

*Attorney for Defendants*

14

## CERTIFICATE OF WORD COUNT

I hereby certify that this memorandum is 4,267 words, which is the word count generated by the word processing software. This word count complies with the applicable word limit of 8400 words.

/s/ Shampa A. Panda
SHAMPA A. PANDA
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0431
Fax: (202) 305-0275
E-mail: shampa.panda@usdoj.gov

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ Shampa A. Panda
SHAMPA A. PANDA
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0431
Fax: (202) 305-0275
E-mail: shampa.panda@usdoj.gov

*Attorney for Defendants*